WILLIAM AUDET (CA Bar No. 117456)
JONAS P. MANN (CA Bar No. 263314)
AUDET & PARTNERS, LLP
waudet@audetlaw.com
jmann@audetlaw.com
221 Main Street, Suite 1460
San Francisco, CA 94105
Telephone:      (415) 568-2555
Facsimile:      (415) 568-2556

ROBERT K. SHELQUIST (Admitted *Pro Hac Vice*)
KAREN HANSON RIEBEL (Admitted *Pro Hac Vice*)
rshelquist@locklaw.com
kriebel@locklaw.com
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue S., Suite 2200
Minneapolis, MN 55401
Telephone:      (612) 339-6900
Facsimile:      (612) 339-0981

***Interim Co-Lead Counsel***

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE GOOGLE ANDROID CONSUMER PRIVACY LITIGATION<br><br>This document relates to:<br>ALL CASES | Case No.: 11-MD-02264 JSW<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND AMENDED CONSOLIDATED COMPLAINT**<br><br>Date:        October 4, 2013<br>Time:        9:00 a.m.<br>Judge:      Hon. Jeffrey S. White |

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     PROCEDURAL HISTORY AND THE SECOND AMENDED COMPLAINT ................ 2

III.    BACKGROUND .................................................................................................. 3

        A.      Google's Unauthorized Collection of Plaintiffs' Private Geolocation Data ............. 3

        B.      Google's Enabling of Collection of User's Data by Third Party Apps..................... 4

IV.     ARGUMENT ...................................................................................................... 5

        A.      Plaintiffs Have More than Adequately Alleged Article III Standing........................ 5

                1.      Android Causes Diminished Battery Capacity ............................................. 6

                2.      Google's Improper Data Collection ............................................................ 7

                3.      The Diminution in Value of the Android Devices........................................ 8

                4.      Google's Improper Utilization of Plaintiffs' Data Plans .............................. 9

        B.      Plaintiffs Have Stated a Cause of Action Under the CFAA....................................... 9

                1.      The SAC Alleges "Damages" And "Losses" as a Result of Google's
                        Conduct ................................................................................................. 10

                2.      Plaintiffs State a Violation of the CFAA..................................................... 13

        C.      Plaintiffs Have Stated a Cause of Action Under the UCL ..................................... 16

                1.      Google's Unlawful Conduct.................................................................... 18

                2.      Google's Unfair Conduct ....................................................................... 18

                3.      Google's Fraudulent Conduct.................................................................. 19

                4.      Google's Class Arguments Are Premature................................................. 20

V.      EVIDENTIARY OBJECTIONS................................................................................. 20

VI.     CONCLUSION .................................................................................................. 20

Case No.: 11-MD-02264 JSW
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
SECOND AMENDED CONSOLIDATED COMPLAINT

# TABLES OF AUTHORITIES

*Cases*

*America Online, Inc. v. Nat'l Health Care Discount, Incorp.*,
121 F. Supp. 2d 1255 (N.D. Iowa 2000)........................................................... 12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................. 5

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................... 5

*Belton v. Comcast Cable Holdings, LLC*, 151 Cal. App. 4th 1224 (2007) ........................................ 19

*Birdsong v. Apple Inc.*, 590 F.3d 955 (9th Cir. 2009)........................................... 7

*Bose v. Interclick, Inc.*, 2011 U.S. Dist. LEXIS 93663 (S.D.N.Y. Aug. 17, 2011) ..................... 11

*Brazil v. Dole Food Co.*, 2013 U.S. Dist. LEXIS 42026 (N.D. Cal. March 25, 2013) ....................... 9

*Bruno v. Eckhart Corp.*, 280 F.R.D. 540 (C.D. Cal. 2012) ......................................... 20

*Butler v. Los Angeles City*, 617 F. Supp. 2d 994 (C.D. Cal. 2008)................................... 20

*Camacho v. Auto Club of So. Cal.*, 142 Cal. App. 4th 1394 (2006) ................................. 18

*Cel-Tech Communs., Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163 (1999)............................ 16, 18

*Cent. Delta Water Agency v. United States*, 306 F.3d 938 (9th Cir. 2002) ........................... 8

*Clapper v. Amnesty Int'l, USA*, 133 S.Ct. 1138 (2013) ........................................... 9

*Clayworth v. Pfizer, Inc.*, 49 Cal. 4th 758 (2010) ................................................ 17

*Cole v. Asurion Corp.*, No. CV 06-6649 PSG (JTLx),
2008 WL 5423859 (C.D. Cal. Dec. 30, 2008)................................................... 17

*Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp.2d 1039 (N.D. Cal. 2010) ................... 10

*Czech v. Wall Street on Demand* 674 F. Supp. 2d 1102 (D. Minn. 2009).................................. 12

*Degelmann v. Adv. Med. Optics, Inc.*, 659 F.3d 835 (9th Cir. 2011 ................................. 9

*Del Vecchio v. Amazon.com, Inc.*, 2012 WL 1997697
(W.D. Wash. June 1, 2012)................................................................. 12

*Denney v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006)........................................... 8

*Edwards v. First Am. Corp.*, 610 F.3d 514 (9th Cir. 2010),
cert. granted in part by *First Am. Corp. v. Edwards*, 131 S.Ct. 3022 (2011) ..................... 9

*Equity Lifestyle Props., Inc. v. County of San Luis Obispo*, 548 F.3d 1184 (9th Cir. 2008) ............... 6

*Erickson v. Pardus*, 551 U.S. 89 (2007) ................................................................ 5, 13

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
SECOND AMENDED CONSOLIDATED COMPLAINT

*First Am. Corp. v. Edwards*, 131 S.Ct. 3022 (2011) ............................................................... 9

*Fletcher v. Security Pac. Nat'l Bank*, 23 Cal. 3d 442 (1979) .................................................... 17

*Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*,
    204 F.3d 149 (4th Cir. 2000) (en banc) .................................................................................. 8

*G&C Auto Body Inc. v. Geico General Ins. Co.*, 2007 WL 4350907
    (N.D. Cal. Dec. 12, 2007) ..................................................................................................... 17

*Goodman v. HTC America, Inc.*, 2012 U.S. Dist. LEXIS 88496 (W.D. Wash. June 26, 2012)........... 7

*In re America Online, Inc.*, 168 F. Supp. 2d 1359 (S.D. Fla. 2001) ...................................... 11

*In re Apple & ATTM Antitrust Litig.*, 2010 WL 3521965 (N.D. Cal. Jul. 8, 2010) ........................... 11

*In re Hulu Privacy Litig.*, 2012 U.S. Dist. LEXIS 112916
    (N.D. Cal. August 10, 2012).......................................................................................... v, 3, 8

*In re iPhone App. Litig.*, 844 F. Supp. 2d 1040 (N.D. Cal. 2012) ...................................... passim

*In re Nissan North America, Inc. Odometer Litig.*, 664 F. Supp. 2d 873 (M.D. Tenn. 2009) ........... 17

*In re POM Wonderful LLC Mktg. & Sales Practices Litig.*,
    2012 U.S. Dist. LEXIS 141150 (C.D. Cal. Sept. 28, 2012) .................................................. 20

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
    903 F. Supp. 2d 942 (S.D. Cal. 2012) ..................................................................................... v

*In re Tobacco II Cases*, 46 Cal. 4th 298 (2009) ..................................................................... 19

*In re Toys R Us Priv. Litig.*, 2001 WL 34517252............................................................... 11

*Jewel v. Nat'l Sec. Agency*, 2011 WL 6848406 (9th Cir. Dec. 29, 2011) ........................................... 9

*Kasky v. Nike, Inc.*, 27 Cal. 4th 939 (2002) ......................................................................... 18

*Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134 (2003)..................................... 17

*Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011)........................................................ 16, 17

*LaCourt v. Specific Media, Inc.*, 2011 U.S. Dist. LEXIS 50543 (C.D. Cal. April 28, 2011) ................ 7

*Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010 (N.D. Cal. 2012) ............................................ 8

*LVRC Holdings v. Brekka*, 581 F.3d 1127 (9th Cir. 2009) ...................................................... 15

*Mass. v. E.P.A.*, 549 U.S. 497 (2007) .................................................................................... 5

*Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012) ........................................... 9, 20

*McKell v. Washington Mutual, Inc.*, 142 Cal. App. 4th 1457 (2006) ........................................ 18, 19

*Pirozzi v. Apple Inc.*, 2012 WL 6652453 (N.D. Cal. Dec. 20, 2012).......................................... 9

Case No.: 11-MD-02264 JSW
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
SECOND AMENDED CONSOLIDATED COMPLAINT

*Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629 (7th Cir. 2007) ............................................ 8

*Preminger v. Peake*, 552 F.3d 757 (9th Cir. 2008 ........................................................ 6

*Saunders v. Superior Court*, 27 Cal. App. 4th 832 (1994) ............................................ 18

*Schatzki v. Weiser Capital Mgmt., LLC*,
    2012 U.S. Dist. LEXIS 92442 (S.D.N.Y. July 3, 2012) .................................... 11

*Shamrock Foods Co. v. Gast*, 535 F. Supp. 2d 962 (D. Ariz. 2008) .............................. 14

*Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035 (9th Cir. 2010) ............... 18

*Smith v. State Farm Mutual Automobile Ins. Co.*, 93 Cal. App. 4th 700 (2001) ............. 18

*Stearns v. Ticketmaster Corp.*, 655 F.3d 1013 (9th Cir. 2011) ..................................... 9

*Summers v. Earth Island Inst.*, 555 U.S. 488 (2009) .................................................. 9

*Sutton v. St. Jude Med. S.C., Inc.*, 419 F.3d 568 (6th Cir. 2005) ................................. 8

*United States v. Nosal*, 676 F.3d 854 (9th Cir. 2012) ................................................ 15

*Vasquez v. Los Angeles County*, 487 F.3d 1246 (9th Cir. 2007) ................................. 5

*Warth v. Seldin*, 422 U.S. 490 (1975) ................................................................. 6

*White v. Trans Union LLC*, 462 F. Supp. 2d 1079 (C.D. Cal. 2006) ............................ 17

**Statutes**
18 U.S.C. § 1030 ...................................................................... 10, 11, 13, 14

Cal. Bus. & Prof. Code § 17200 ...................................................................... 1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
SECOND AMENDED CONSOLIDATED COMPLAINT

**SUMMARY OF ARGUMENT**

Plaintiffs have complied with this Court's March 26, 2013 order ("Order"). Ignoring the more than ample factual allegations in the Second Amended Complaint ("SAC") that support Plaintiffs' claims, Defendant Google reargues issues already decided by the Court and attempts to turn its motion to dismiss into a one-sided motion for summary judgment by relying on numerous documents that are never referenced in the SAC and which Google did not even author.

The Order made it clear the deficiency of the FAC was one of injury and damages – i.e., Plaintiffs failed to allege sufficient injury to show Article III standing. The SAC added more than sufficient allegations regarding the damages suffered by Plaintiffs and members of the class. Specifically, Plaintiffs allege that the collection and tracking of data consumed "battery life, bandwidth, and file storage of their Android Mobile Phones" (SAC ¶9); the collection and transmission of tracked data "impermissibly consumed a portion of Plaintiffs' data plans that were then unavailable to them to use without incurring additional expense" (SAC ¶12; see also 103-105); Google impermissibly used battery power "which shortens the batter life of their phone batteries" (SAC ¶14; see also SAC ¶30; 98-102). The SAC alleges exactly how Android tracks their location and collects their information and exactly how it tracks and allows apps to track, collect, and sell other personal information. (SAC ¶70-87.) And that Google did all of this while representing to Plaintiffs that their data would be secure. (SAC ¶106-115.) (*See* Dkt. 65, Redline of FAC and SAC.)

There is ample case law to support Plaintiffs' standing here. *See In re Hulu Privacy Litig.*, 2012 U.S. Dist. LEXIS 112916, at *23 (N.D. Cal. August 10, 2012); (denying motion to dismiss where defendant assigned users static ID numbers and tracked personal information based on that number); *In re iPhone App. Litig.* ("*In re iPhone II*"), 844 F. Supp. 2d 1040 (N.D. Cal. 2012) (denying motion to dismiss UCL and CLRA claims against mobile device manufacturer where Plaintiffs alleged they would have paid less for mobile phones); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 957-959 (S.D. Cal. 2012) (holding that customers whose personal information was the subject of a data breach and pleaded potential for future harm and temporary loss of use of their gaming systems had Article III standing).

# I.    INTRODUCTION

This class action arises out of Google's tracking of Plaintiffs' and Class Members' otherwise private, personal information and geolocation data without legally required disclosure or the knowing consent of the class members. Despite Google's derisions that the SAC "abandons" claims and makes "cosmetic" changes, in response to the Court's Order and recent case law, Plaintiffs narrowly tailored the SAC and limited their claims to violations of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, and the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.* Indeed, it is ironic that, in light of the recent and on-going now public disclosures as to Google's "sharing" of volumes of private data it has collected with the U.S. Government, Google claims that Plaintiffs' claims are baseless and the that SAC fails to provide sufficient notice.

The SAC pleads allegations establishing that Plaintiffs have standing to assert these claims against Google, whose unauthorized use of the resources of phones belonging to Plaintiffs, diminished their value, depleted the finite amount of both the battery life and data plan available to them, and engaged in unauthorized tracking of geolocation data. Google's papers disregard the allegations in the SAC related to its conduct and instead focuses on what it claims is user "consent" in its  Terms of Service ("TOS"). This selective presentation ignores that Google has uniformly failed to honor the promises it made in those same documents. Google cannot on the one hand claim it is immune due to purported "acceptance" by class members of the TOS and ignore that the same document fails to provide any meaningful disclosures as to Google's misuse of Plaintiffs' data and its creation of an ecosystem that encourages apps to collect to collect and misuse that data for its commercial gain.

Google designed Android in a way that encourages the collection of personal and geolocation data by providing app developers with a Software Development Kit ("SDK") that include "hooks." Google cannot now disclaim the behavior it sought to encourage and hide behind its agreements with third parties. The fact of, effectiveness of, and pervasiveness Google's tracking and data collection cannot be seriously challenged as implausible or, at this point, as even improbable given the latest whistleblower disclosure of Google's data sharing with government agencies. Plaintiffs have set forth ample facts showing standing to bring this action and state claims under CFAA and the UCL. Accordingly, Defendant's motion should be denied.

## II.      PROCEDURAL HISTORY AND THE SECOND AMENDED COMPLAINT

On March 26, 2013, the Court granted and denied in part Google's motion to dismiss. The Court held that the FAC failed to adequately allege injury such that Plaintiffs lacked standing to bring the suit as to all theories (except the improper use of batteries) and failed to state claims (except as to the unfair prong of the UCL). Plaintiffs filed the SAC on May 9, 2013.

First, the Court held that Plaintiffs failed to identify which Android mobile devices they used and which apps accessed and tracked their information. In the SAC, Plaintiffs added allegations of the type of Android device, date of purchase, and purchase price for each of the named Plaintiffs. (SAC ¶¶35-46.) The SAC includes the specific apps used by each Plaintiff and the data collected by each of those apps (SAC ¶¶74-87) and allegations as to how Google benefited from the tracking of users' data and phone usage and that it was tracked without their knowing consent. (SAC ¶¶10-11.)

Second, the Court held that Plaintiffs failed to allege facts showing Plaintiffs had relied on statements made by Google related to the security or privacy of their phones or devices. The SAC includes detailed language from Google's TOS that constitutes Google's misrepresentations. (SAC ¶¶108-117) and contains allegations that Plaintiffs would not have paid as much for their devices had they known Google would be tracking, sharing, or selling their personal data. (SAC ¶13, 97.) Google's representations include, *inter alia*, Google's representation that it would "take appropriate security measures to protect against unauthorized access to or unauthorized alteration, disclosure or destruction of data."

Third, the SAC added details regarding Google's improper use of users' data plans. (SAC ¶¶105-107.) Plaintiffs' contract with their phone carriers for data plans with a set amount of data. Once they exceed that amount, class members are forced to pay fees on the overage and face intentional slowdown of their service if they are using too much bandwidth. By constantly collecting and transmitting data regarding Plaintiffs' location and usage of their phones without disclosure, Google is allocating for itself a portion of user's data plans for its financial gain and without the users' informed consent. Fourth, Plaintiffs added to the SAC numerous sources that have come to light since the initial filing of these actions that detail Google's conduct and detail how Google uses Android to track and disclose personal information without informed consent. (SAC ¶¶15-19.)

Despite these additional facts, Google challenged the SAC with submissions that go well beyond the "four corners" of the SAC. Nonetheless, the allegations, obtained without discovery, state viable claims under CFAA and UCL. Further, recent case law supports Plaintiffs' proceeding with this action. See *In re Hulu*, 2012 U.S. Dist. LEXIS 112916, at *23 (N.D. Cal. August 10, 2012); (denying motion to dismiss where defendant tracked personal data tied to a static user ID); *In re iPhone II*, 844 F. Supp. 2d 1040 (N.D. Cal. 2012) (denying motion to dismiss UCL and CLRA claims against mobile device manufacturer where Plaintiffs alleged they would have paid less for mobile phones if they had known about privacy issues); *In re Sony Gaming*, 903 F. Supp. 2d at 957-959 (holding that customers whose personal information was the subject of a data breach and pleaded potential for future harm and temporary loss of use of their gaming systems had Article III standing).

## III. BACKGROUND

### A. Google's Unauthorized Collection of Plaintiffs' Private Geolocation Data

Plaintiffs allege that Google routinely acquires information about the precise geographic locations of users and that Android collects data about locations of users regardless of whether any App is running and that this collection and transmission of information improperly uses system resources including battery life and available data plan. (SAC ¶ 70). The Android device tracks users' locations and, contrary to Defendant's representations, Defendant does not maintain a legitimate "opt-in" location services feature. In fact, (1) even when geolocation services are turned off the Android devices continue to collect and store geolocation data, and this information is transmitted to Google the next time location services are turned on; and (2) despite Defendant's claims that once users opt-in, they will be "anonymized" – in reality, any location data that is sent back to Google location servers is tied and/or traceable to a specific user through the use of UUIDs. (SAC ¶ 73.) It is this surreptitious collection of data which the government hoovers in the name of national security.

In Android, Google intentionally created an environment which allows Google to access substantial information about users. (SAC ¶ 54.) Google designed Android to include software "hooks" allowing specific information about specific Android devices and their users to be available to the Apps running on the devices. (SAC ¶ 54.) Google itself launched the Android Market (now known as Google Play), developed the Software Developer Kit ("SDK") for Android App

1  Developers, provided App Developers with specific codes to be embedded in Apps to accomplish

2  data collection, and maintains control of the App by including in the SDK a clause giving Google the

3  ability to step into the shoes of the App developer. (SAC ¶¶ 50-60.)

4      The scope of the collection and transmission of geolocation data was not fully disclosed to

5  Plaintiffs and the other members of the Class. (SAC ¶ 30.) Plaintiffs allege that this geolocation data

6  was collected multiple times per minute and the information was collected and transmitted back to

7  Google several times per hour. (SAC ¶ 31.) This transmission of data resulted in unreasonable and

8  unexpected battery consumption, diminution of battery life, and data usage for which Plaintiffs were

9  required to pay. (SAC ¶¶ 32-33, 98-105.)

10      **B.      Google's Enabling of Collection of User's Data by Third Party Apps**

11      Google's motion ignores the reality of its intentional design of Android and its relationship with

12  Android users and App developers. Google designed Android to enable and promote the tracking of

13  Plaintiffs' personal information. (SAC ¶3.) Google represented to Android users through its terms of

14  service and privacy policy that it would protect their data and that disclosures would be made

15  regarding what data was being collected and when. (SAC ¶¶108-117.) Through its inaction in

16  enforcing its own policies and allowing apps to essentially run wild, Google violated those

17  representations. Google's attempts now to shift the blame to app developers or downplay the nature of

18  the data collected do nothing to alter the fact that Google itself broke its agreements with Android

19  users. As detailed in the SAC, through the SDKs, Google provides app developers with the tools to

20  track an Android user's usage of the phone and associate it with the UUID. Google encourages (and

21  benefits from) developers' constructing their apps to take advantage of this tracking of data. Android

22  tracks the user's UUID, precise location, age, gender, zip code, country, and specifics about the

23  Android device settings. (SAC ¶79.) While Google attempts to downplay the significance of this data

24  in its brief by associating all this information with a particular UUID – and thus a particular user – it is

25  able to obtain an extraordinary amount of personal information about its users. Further, Google

26  ignores that *Android itself* – not just third party apps – collects and transmits information back to

27  Google, (SAC ¶5) which, in turn, is used for Google's own commercial gain.

28      Google's arguments on pages 3-6 of its motion regarding the method of collection of user

Case No.: 11-MD-02264 JSW
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
SECOND AMENDED CONSOLIDATED COMPLAINT

1   information are completely beyond the four corners of the SAC and must be disregarded. Google

2   argues about where users *could* acquire apps (p.3 ln.10-11) despite the fact that the SAC alleges the

3   apps at issue were obtained from Google Play. (SAC ¶3; 35-46.) Google argues what data *Google*

4   *thinks* is personal in nature. (p.4 ln.1-14.) Google attempts to improperly introduce additional

5   documents and purports to rely on those for its defense. (p.5.) Google purports to rely on its Developer

6   Distribution Agreement to absolve itself of any responsibility for the misuse of personal data by its

7   app developers and conveniently ignores that the one of the central issues of the SAC is that Google is

8   not sufficiently enforcing its own policies (SAC ¶62) and that Google itself is using the information it

9   improperly obtains from users its own for commercial gain. (SAC ¶10.)

10  **IV.   ARGUMENT**

11      The only issue is whether the SAC satisfies Rule 12(b)(6), as set forth in *Bell Atlantic Corp. v.*

12  *Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual

13  content that allows the court to draw the reasonable inference that the defendant is liable for the

14  misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a motion to dismiss,

15  a court must accept all of the plaintiffs' allegations as true and construe them in the light most

16  favorable to the plaintiff, and limit the overall inquiry to the factual allegations. *Id.* at 550; *Erickson v.*

17  *Pardus*, 551 U.S. 89, 93–94 (2007); *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir.

18  2007).  Plaintiffs have more than satisfied the demands of the Court's order and adequately alleged

19  standing and stated their CFAA and UCL claims.

20      **A.      Plaintiffs Have More than Adequately Alleged Article III Standing**

21      To establish standing, Plaintiffs need only "demonstrate that [they have] suffered a concrete and

22  particularized injury that is either actual or imminent, that the injury is fairly traceable to the

23  defendant, and that it is likely that a favorable decision will redress that injury." *Mass. v. E.P.A.*, 549

24  U.S. 497, 517 (2007).  Google not only ignores the allegations in the complaint and the Court's

25  determination that standing had been already been satisfied in the prior complaint with respect to the

26  battery life, Google mischaracterizes the nature of the data it collects. In Google's view, this data,

27  consisting of UUID, geolocation information (SAC ¶27, 61, 64), Wi-Fi networks (SAC ¶31), app

28  activity including searches and music selection (SAC ¶64), gender (SAC ¶64), phone settings (SAC

¶76), and other app data (SAC ¶¶77-87) is *de minimus*. Yet Google provides no explanation as to how it purportedly does not have enough information to understand the claims while it simultaneously is able to characterize the claims and mount a defense to them. Further, contrary to Google's unsupported characterization of the amount and type of data collected without consent is somehow *de minimus*, there is no requirement that the injury suffered be sufficiently great or grand. The Ninth Circuit has held that "[t]he injury may be minimal," *Preminger v. Peake*, 552 F.3d 757, 763 (9th Cir. 2008) (collecting authorities), and standing still exists. Furthermore, standing "in no way depends on the merits of the plaintiff's contention that particular conduct is illegal," *Warth v. Seldin*, 422 U.S. 490, 500 (1975), and "does not require … an analysis of the merits." *Equity Lifestyle Props., Inc. v. County of San Luis Obispo*, 548 F.3d 1184, 1189 n.10 (9th Cir. 2008).

In the complaint, contrary to Google's affirmative defenses, Plaintiffs' claims are directly traceable to Google's conduct. As alleged (1) Google designed the Android device to automatically transmit Plaintiffs' geo-location information (SAC ¶2, 3, 5, 15, 30, 31, 70-73); (2) Google designed the Android operating system to include software hooks which allowed specific information about an Android Mobile Device, and what the user was doing with the device, to be available to an App running on the phone (SAC ¶2, 3, 6, 19, 54, 55, 56, 57, 58); (3) Google provided App developers with SKDs free of charge and encouraged App developers to build such capabilities into their apps (SAC ¶54, 55, 56, 57, 58); and (4) Google controls and greatly profits from Google Play and the Apps offered therein. Indeed, recent allegations demonstrate that the SAC has only touched the surface of Google's overall scheme with respect to collection and sharing of private information.

### 1.    Android Causes Diminished Battery Capacity

Despite this Court's ruling that the FAC alleged standing as to the battery capacity allegations, Google reargues the law of this case. Google contends that the SAC fails to link the diminished battery capacity to any of the named Plaintiffs. This is inaccurate. Android's constant tracking and transmitting of Plaintiffs' user data has a direct impact on the life of the battery of the device. Geolocation information must be tracked using GPS technology, which is resource-intensive and the user information is transmitted using Plaintiff's cellular data. (SAC ¶¶100-104.) As detailed in the SAC, even when locations services are turned off, Android continues to track that information (using

battery power) and then transmits it back to Google once location services are turned back on (again, using battery power and also data). As the Court rightly found in its prior order "[d]iminution in the performance of an electronic device may constitute injury in fact…" *Goodman v. HTC America, Inc.*, 2012 U.S. Dist. LEXIS 88496, at *17 (W.D. Wash. June 26, 2012) (quoting *LaCourt v. Specific Media, Inc.*, 2011 U.S. Dist. LEXIS 50543 (C.D. Cal. April 28, 2011). Furthermore, in a case involving similar issues, another court in this district held that allegations of this type of undisclosed data tracking coupled with allegations of diminished battery capacity are sufficient for Article III standing. *See In re iPhone II.*, 844 F. Supp. 2d at 1054-56.

Google's arguments that the SAC fails to link improper battery drain to the named Plaintiffs are absurd – Android by design improperly uses the power resources of a user's device. If a person is using an Android device, they have been affected.[1] Google's argument that no injunctive or declaratory relief could be granted that would remedy this problem is based entirely on Google's misinterpretation of the nature of the relief requested. If in the future Google were required to disclose all of the tracking Android devices do, class members could make an informed determination when purchasing (or not) an Android device. In short, they would make informed purchasing decisions and knowingly entering into Google's click through contracts of adhesion.

Finally, this Court held in its March 26, 2013 order that Plaintiffs' FAC had alleged sufficient facts related to diminished battery capacity to have standing as to Google. (Order (Dkt. 49) at p.9.) Nothing in Defendant's belated reargument has any merit.

### 2.   Google's Improper Data Collection

The SAC details the methods by which Google provided app developers with SDKs that encouraged the collection of Android users' personal data. (SAC ¶50-68.) The SAC further details the extent to which the Plaintiffs were in fact harmed by having their personal information seized from their Android devices without their consent. (SAC ¶2, 8, 11-14.) Google's argument that this injury is

---

[1] Google's citation to *Birdsong v. Apple Inc.*, 590 F.3d 955 (9th Cir. 2009), is inapt. In *Birdsong*, plaintiffs sued over a potential *physical injury* that no named plaintiff actually suffered; they merely alleged potential harm. Here, Plaintiffs have detailed how Google, by design, has caused and continues to cause improper battery drain on their devices.

too speculative is factually and legally incorrect. "[T]he injury-in-fact requirement can be satisfied by a threat of future harm or by an act which harms the plaintiff only by increasing the risk of future harm that the plaintiff would have otherwise faced, absent the defendant's actions." *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 634 (7th Cir. 2007) (citing *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264-65 (2d Cir. 2006); *Sutton v. St. Jude Med. S.C., Inc.*, 419 F.3d 568, 574-75 (6th Cir. 2005); *Cent. Delta Water Agency v. United States*, 306 F.3d 938, 947-48 (9th Cir. 2002); *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 160 (4th Cir. 2000) (en banc)).

Google's arguments that Android and the apps used by Plaintiffs do not collect data *Google thinks is actionable* is irrelevant and an issue for a jury. Other courts have rejected similar efforts to claim person data of this nature is not "personal" information. Information being tracked and associated with a unique profile identification number – similar to the UUID numbers associated with Plaintiffs' Android devices alleged here – is to be considered personally identifying information. *In re Hulu*, 2012 U.S. Dist. LEXIS 112916, at *23 (N.D. Cal. August 10, 2012) ("Hulu gave Scorecard research Plaintiffs' 'Hulu profile identifiers' linked to their 'individual Hulu profile pages that included name, location preference information designated by the user as private, and Hulu username.'"); *see also See In re iPhone II*, 844 F. Supp. 2d 1040; *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1021 (N.D. Cal. 2012) (holding that where data associated with unique ID number was collected and given to third parties, plaintiffs had standing to bring claim). It was previously disclosed that Google uses this information to tailor ads and realize corporate gain.

### 3.    The Diminution in Value of the Android Devices

Plaintiffs suffered an injury in fact by their overpaying for phones that, unknown to them, ran an operating system that was essentially spyware. In its brief, Google acknowledges that the SAC contains this allegation at Paragraph 97 but says it is insufficient because Google thinks it is insufficient without further explanation. Plaintiffs allege they would not have purchased the phones or would have paid less for them if they had known about their insufficient privacy. That is all that is required to show standing. The Ninth Circuit has held that plaintiffs who purchase or overpay for a product as a result of reliance on a defendant's misrepresentations regarding qualities and characteristics of the product have alleged economic harm sufficient for Article III standing. *See*

1   *Degelmann v. Adv. Med. Optics, Inc.*, 659 F.3d 835, 839-40 (9th Cir. 2011); *Stearns v. Ticketmaster

2   Corp.*, 655 F.3d 1013, 1021 (9th Cir. 2011); *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 595 (9th

3   Cir. 2012). Further, Plaintiffs' allegations of constitutional and statutory violations also provide an

4   independent basis for standing. *See Edwards v. First Am. Corp.*, 610 F.3d 514, 517 (9th Cir. 2010),

5   cert. granted in part by *First Am. Corp. v. Edwards*, 131 S.Ct. 3022 (2011); *Jewel v. Nat'l Sec.

6   Agency*, 2011 WL 6848406, at *4 (9th Cir. Dec. 29, 2011); *Brazil v. Dole Food Co.*, 2013 U.S. Dist.

7   LEXIS 42026, at *36-38 (N.D. Cal. March 25, 2013) ("concrete and particularized injury based on the

8   fact that [plaintiff] allegedly was deceived, and then paid money that he would not have otherwise

9   have paid had he known about the true nature of Defendant's products."). Google's citation to *Pirozzi

10  v. Apple Inc.*, 2012 WL 6652453, at *4 (N.D. Cal. Dec. 20, 2012), does nothing because the SAC

11  does specifically allege which false statements were material – the TOS and its incorporated privacy

12  policy. (SAC ¶106-115.) Google's argument otherwise is nonsense in the face of the plain language of

13  the SAC.

14          **4.      Google's Improper Utilization of Plaintiffs' Data Plans**

15          Google's argument that the allegations regarding improper data plan use are "too speculative" is

16  incorrect. The data plans offered by Plaintiffs' cellular carriers provide a finite amount of data that can

17  be used each month. (SAC ¶¶103-105.) Through Google's undisclosed transmission of the data it

18  collects, it is necessarily using a portion of that finite amount of data. While Google again argues that

19  the amount of data must certainly be *de minimus*, it offers no support for that assertion other than its

20  own belief. Further, Google cannot show how its unauthorized use of Plaintiffs' finite data plans is

21  proper in any amount. Finally, the only cases Google cites[2] have nothing to do with data plans or

22  anything on point. Rather they hold that allegations of possible future injury are insufficient for

23  standing. But this is not hypothetical or speculative – Plaintiffs pay for a finite amount of data.

24  Android is using some of that data without permission.

25  **B.      Plaintiffs Have Stated a Cause of Action Under the CFAA**

26          Defendant is liable under the federal Computer Fraud and Abuse Act ("CFAA") because

27  _____
28  [2] *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009); *Clapper v. Amnesty Int'l, USA*, 133 S.Ct.
    1138, 1147 (2013).

Plaintiffs allege that (1) their Android devices were a "protected computer … which is used in or affecting interstate or foreign commerce and/or communication," 18 U.S.C. § 1030(e)(2)(B); (2) Plaintiffs are persons entitled to sue under the CFAA's civil-remedies provision, 18 U.S.C. § 1030(g); and (3) Plaintiffs suffered the requisite loss and damage under 18 U.S.C.§ 1030(e)(8), (11), as a result of Google's multiple violations of CFAA provisions. With respect specifically to the CFAA's loss and damage requirements, Plaintiffs allege that: (1) Google knowingly collected and transmitted personal information with an economic value, resulting in an economic loss to plaintiffs (SAC ¶ 90-96); (2) Google's acquisition of location data resulted in battery-resource consumption, interruption of Plaintiffs' service, and damage to the integrity of the battery itself (SAC ¶ 98-102); and (3) Google used Plaintiffs' data resources when transmitting data, and because Plaintiffs' have a finite amount of data usage on their cell carriers' data plans, such data resource utilization cost Plaintiffs money in the form of lost available data and potential overage charges (SAC ¶ 103-105). Plaintiffs allege that these damages and losses were a direct result of Google's accessing of Plaintiffs' mobile devices without Plaintiffs' authorization or exceeding Plaintiffs' authorization. These allegations are all that is required to state claims under the CFAA at the pleading state of litigation. *See Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1056-57 (N.D. Cal. 2010) (outlining the elements of a CFAA claim under § 1030(a)(5)(B) and (C)).

### 1.    The SAC Alleges "Damages" And "Losses" as a Result of Google's Conduct

In order to bring a civil action under the CFAA, Plaintiffs must allege "loss to 1 or more persons during any 1-year period … aggregating at least $5,000 in value." 18 U.S.C. § 1030(c)(4)(A)(i)(I); *see also* 18 U.S.C. § 1030(g) (providing that in order to maintain a civil action under the CFAA a plaintiff must allege one of the factors set out in subclause (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i)). "Loss" is defined as "*any reasonable cost to any victim*, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11) (emphases added). "Damage" is defined as "any impairment to the integrity or availability of data, a

program, a system, or information." 18 U.S.C. § 1030(e)(8).[3]

### a.      Plaintiffs May Aggregate Their Damages

Each Plaintiff is not required to plead the $5,000 threshold; courts have allowed the aggregation of claims regarding multiple computers (or devices, in this case) to meet the threshold of at least $5,000 in damage in a one-year period, as required by the CFAA. *See, e.g., In re Apple & ATTM Antitrust Litig.*, 2010 WL 3521965, at *6 (N.D. Cal. Jul. 8, 2010) ("Plaintiffs may aggregate individual damages over the putative class to meet the damages threshold"); *see also In re iPhone II.*, 844 F. Supp. 2d at 1066 (stating a "plaintiff may aggregate individual damages over the putative class to meet the damages threshold if the violation can be described as 'one act.'"). While Google contends that aggregation is inappropriate here because the alleged conduct involves what Google characterizes as "separate actions," the "same act" requirement encompasses a defendant's act of "releasing for distribution … millions of copies of an Internet access product, which, once installed, allegedly caused the damage to computers." *In re Toys R Us, Inc. Priv. Litig.*, 2001 WL 34517252, at *11 (*citing In re America Online, Inc.*, 168 F. Supp. 2d 1359 (S.D. Fla. 2001)). Here, Plaintiffs allege damages of the same type and form, common across the class, as a result of Google's conduct and therefore aggregation is appropriate.

### b.      Plaintiffs Have Alleged $5,000 in Aggregate Loss or Damages

Defendant further argues that Plaintiffs' SAC fails to remedy the deficiencies in pleading loss and damages outlined by this Court in its March 26, 2013 Order. But Defendant ignores the significant additional factual details added to the SAC that support Plaintiffs' claims of damages or loss. Plaintiffs' SAC pleads with sufficient specificity under Rule 8 of the Federal Rules of Civil Procedure damages and loss as defined by the CFAA, and goes beyond that which was alleged in the cases cited by Defendant in support of its motion to dismiss.

---

[3] Google's citation to *Bose v. Interclick, Inc.*, 2011 U.S. Dist. LEXIS 93663 (S.D.N.Y. Aug. 17, 2011), is inapt. In *Bose*, plaintiff failed to allege any concrete impairment of function. *Id.* at *11-12. Here, Plaintiffs alleged that Google's conduct impaired the function of their phones by depleting battery life and data plan resources. Thus Plaintiffs have alleged *concrete impairment*. Google's attempt to impute its own definition of damages that requires physical damage is unsupported. "[P]hysical damage to a computer is not necessary to allege damage or loss." *Schatzki v. Weiser Capital Mgmt., LLC*, 2012 U.S. Dist. LEXIS 92442, at *5 (S.D.N.Y. July 3, 2012).

Here, Plaintiffs allege that Google damaged them by (1) harming the integrity of their data, (2) interfering with their service, (3) damaging and using the resources of their device batteries, and (4) consuming the available data in their data plans. (SAC ¶ 88-105). These are not allegations involving a "vague invocation of 'damages,'" as argued by Defendant, but – in contrast to the FCAA – the allegations contain quantifiable monetary values associated with both the device battery and data damage and loss. Plaintiffs alleged specific monetary values associated with the battery, and provide a method to determine quantifiable monetary damages associated with the allegations regarding battery usage and injury. (SAC ¶ 32-33). Further, the SAC quantifies the monetary value of Defendant's use of data. Plaintiffs are required to pay for the data used, and Google's use of Plaintiffs' data results in monetary loss or damage to Plaintiffs in the form of either payment under their established data plans, and/or additional payment for overage uses in relation to their data plans. (SAC ¶ 103-105).

These specific allegations are distinct from the damage or loss allegations found insufficient in *Del Vecchio v. Amazon.com, Inc.*, 2012 WL 1997697 (W.D. Wash. June 1, 2012). In *Del Vecchio* the court noted that the "[p]laintiffs all-but concede that they suffered no actual monetary detriment." *Id.* at *4. Further, Plaintiffs' allegations here go beyond those found insufficient in *In re iPhone II*,[4] where there was no allegation that the damages or loss impaired the use of the iPhone. *In re iPhone II.*, 844 F. Supp. 2d at 1067. Here Plaintiffs alleged that the battery damage and loss and the damage and loss from the data usage impaired the functioning of their phones through the interruption of service. (SAC ¶¶ 100, 146).

According, Plaintiffs alleged both quantifiable and measurable damage and losses in relation to their claims and, in light of the large number of potential class members, Plaintiffs' have alleged

---

[4] *In re iPhone II* relied on two "spamming" cases to conclude that damages under the CFAA require a showing that there was an impairment of service. The first was *Czech v. Wall Street on Demand, Inc.* which held that defendant's unwanted text messages alone did not cause damage to a consumer's cell phone because their receipt did not necessarily "constitute 'impairment' of any magnitude." 674 F. Supp. 2d 1102, 1116 n. 18 (D. Minn. 2009). Both *Czech* and *In re iPhone II* further relied on *America Online, Inc. v. Nat'l Health Care Discount, Incorp.*, an email spamming case that held "when a large volume of [spam] causes slowdowns or diminishes the capacity of AOL to service its customers, an 'impairment' has occurred to the 'availability' of AOL's system." 121 F. Supp. 2d 1255, 1274 (N.D. Iowa 2000) . These cases are not sufficiently analogous to the conduct at issue here. Unlike *In re iPhone II* the SAC alleges disruption of service in the form of reduced battery life and utilization of finite data plans.

1  damages or loss in excess of the $5,000 amount required by the CFAA.

2  **2.    Plaintiffs State a Violation of the CFAA**

3  As admitted by Google, this Court did not reach the additional elements of the CFAA in its

4  March 26, 2013 Order. While Plaintiffs disagree with Google's characterization that the SAC is

5  insufficiently distinguished from the FAC, like Defendants, Plaintiffs incorporate by reference the

6  briefing on these issues that proceeded the Court's March 26, 2013 Order.

7  **a.    The SAC Alleges Facts Supporting a "Transmission" Offense**

8  The CFAA creates liability for "[w]hoever knowingly causes the transmission of a program,

9  information, code, or command, and as a result of such conduct, intentionally causes damage without

10  authorization, to a protected computer." 18 U.S.C. § 1030 (a)(5)(A).

11  Google first argues that Plaintiffs' have failed to allege that Google caused the transmission of

12  any program, code or information. (Def. Br. at 21). But Plaintiffs specifically allege that Google

13  intentionally created Android and its associated APIs to cause the transmission of code or commands

14  that would capture and disclose Plaintiffs' personal information, and likewise, that Developers

15  inserted tracking code found in the SDKs provided by Google. Plaintiffs allege that the tracking code

16  Defendant surreptitiously embedded into Plaintiffs' Apps accessed the personal information on their

17  devices, and transmitted such information to Google and others, without knowing consent.

18  Plaintiffs also allege that Defendant "intended" to cause the damage or, in the alternative,

19  Defendant "knew or should have known" that their conduct would cause the damage discussed in the

20  damages section above. (SAC ¶ 143). Here, Plaintiffs state a plausible and valid claim for relief more

21  than sufficient to survive a motion to dismiss. *Erickson v Pardus*, 551 U.S. at 94 (on motion to

22  dismiss, factual allegations in complaint must be taken as true and all doubts resolved in plaintiffs'

23  favor). Google's contention that it did not know or did not intend for such damage to occur is a

24  question of fact that is not appropriately decided here.

25  **b.    Google Accessed Android Devices Without Sufficient Authorization**

26  Google argues that Plaintiffs have not alleged that Google accessed the Android devices or that

27  Google accessed the devices without authorization or exceeding authorization. (Def. Br. at 22.)

28  Google again attempts to characterize the SAC as only encompassing the conduct of "third-party

Apps that Plaintiffs chose to download." (*Id.*) Google simply ignores much of the Complaint dealing with the allegations regarding Google's conduct. The SAC contains numerous allegations regarding Android devices' surreptitious tracking and collection of location data, including sending geolocation data directly to Google itself. (*See* SAC ¶ 15-20, 31, 54). Google's attempt to shift the blame to app developers is misleading. Plaintiffs allege that Google created the environment which allows Apps to collect additional personal data without user permission. (SAC ¶ at 54). These allegations must be taken as true. Plaintiffs allege Google provided App Developers with API codes in order to accomplish the collection of data from Plaintiffs. (SAC ¶ 56). Finally, while Google claims that it has no control over the Apps, Plaintiffs allege that Google maintains control "by requiring that the end-user license agreement for every third-party App include a clause giving Google the ability to step into the shoes of the App developer to control the user's use of the App." (SAC ¶ 60). Google both directly accessed information on Plaintiffs' Android devices without authorization, Google created and maintained control over the App environment and, ultimately, the Apps themselves – it cannot now distance itself from the conduct of the Apps it controlled.

Google next argues that, even if Plaintiffs can allege Google accessed Android devices, Plaintiffs have not sufficiently pleaded that the access was in excess of Plaintiffs' authorization. The CFAA defines "exceeds authorized access" as: "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter." 18 U.S.C. § 1030(e)(6). A Defendant "exceeds authorized access … when initial access to a protected computer is permitted but the access of certain information is not permitted." *Shamrock Foods Co. v. Gast*, 535 F. Supp. 2d 962 (D. Ariz. 2008).

Google is wrong to suggest that the CFAA is limited only to targeting criminal computer hackers. "The CFAA is a federal statute that creates liability for 'knowingly and with intent to defraud, access[ing] a protected computer without authorization, or exceed[ing] authorized access.'" *In re iPhone II*, 844 F. Supp. 2d at 1064 (quoting 18 U.S.C. § 1030(a)(4)). The Ninth Circuit held that "[t]he CFAA prohibits a number of different computer crimes, the majority of which involve accessing computers without authorization or in excess of authorization, and then taking specified forbidden actions, ranging from obtaining information to damaging computer or computer data."

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
SECOND AMENDED CONSOLIDATED COMPLAINT

*LVRC Holdings v. Brekka*, 581 F.3d 1127, 1130-31 (9th Cir. 2009). Thus the CFAA is not limited to hacking.

Relying on *United States v. Nosal*, 676 F.3d 854, 858 (9th Cir. 2012), Google argues that the SAC does not properly allege Defendant exceeded authorized access because *Nosal* limits the application of the CFAA to an "outside hacker with no authorized access to the computer at all." (Def. Br. at 22). But *Nosal* dealt with use restrictions, and held that "the phrase 'exceeds authorized access' in the CFAA does not extend to violations of use restrictions." *Id*. at 863. Thus, the phrase "exceeds authorized access" in the CFAA embraces individuals who have only limited access to files or data and exceed restrictions on that access, but not those who have unrestricted physical access to a computer and use information stored there for unauthorized purposes. *See Id.* ("we hold that 'exceeds authorized access' in the CFAA is limited to violations of restrictions on access to information, and not restrictions on its use."). Here, Plaintiffs contend Google violated restrictions on access, which is distinct from the conduct at issue in *Nosal*.

Google further argues that Plaintiffs' claims regarding access are undermined by the fact that Plaintiffs purchased Android phones and Defendant provided disclosures about data collection. (Def. Br. at 22.) Google cites *In re iPhone II* to support this argument. But *In re iPhone II* dealt only with an unauthorized access allegation, and not an allegation of exceeding authorized access. 844 F. Supp. 2d at 1066 ("plaintiffs are not asserting an 'exceeds authorized access' claim against Apple"). Here the SAC alleges both unauthorized access and exceeds authorized access claims. (SAC ¶ 131.) These claims are not extinguished by Google's invoking its TOS. Although Google argues that "Google's Privacy Policy makes clear that Google may receive location information from users who activate location services," (Def. Br. at 22), Plaintiffs allege that the Android Devices continue to store geolocation data when the location services are turned off (are <u>not</u> activated), and that this stored information is transmitted to Google the next time the location services are turned on. (SAC ¶ 73.) Further, Google's policies claim that a user who chooses to "opt-in" to location services would have such information "anonymized", but Plaintiffs allege that this representation is false because location data collected by Google is tied or traceable to a specific user through the use of UUIDs. (*Id*.)

Due to these misrepresentations, Plaintiffs cannot be said to have knowingly authorized or

Case No.: 11-MD-02264 JSW
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
SECOND AMENDED CONSOLIDATED COMPLAINT

1   given informed consent to Google. Even if Google argues that it received authorization for certain

2   conduct, Plaintiffs alleged that Google's actions went beyond any authorization given, and thus any

3   access beyond that authorization is a violation of the CFAA.

4   **C.      Plaintiffs Have Stated a Cause of Action Under the UCL**

5   In its March 26, 2013 Order, the Court held that Plaintiffs had standing to sue Google under the

6   diminished battery capacity theory and stated a cause of action under the unfair prong of the UCL.

7   (Order at 13-14.) In the SAC, Plaintiffs remedied the deficiencies found by the Court and the SAC

8   states a cause of action under all three prongs of the UCL and expands Plaintiffs' standing. Google's

9   contention in its brief that "[t]his Court dismissed Plaintiffs' original UCL claim on both standing

10  and substantive grounds" is curious given that the order actually reads "if Plaintiffs are able to

11  sufficiently allege standing, they would be able to state a claim under the unfair prong." (Order at

12  p.14.)

13  The UCL is "sweeping, embracing anything that can properly be called a business practice and

14  at the same time is forbidden by law." *Cel-Tech Communs., Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th

15  163, 180 (1999). A plaintiff has standing to assert a UCL claim if the complaint alleges (1) a loss of

16  money or property (i.e., economic injury); and (2) injury in fact. *Kwikset Corp. v. Superior Court*, 51

17  Cal. 4th 310 (2011).

18  Google again relies on a false argument that the SAC fails to allege loss of money or property.

19  Plaintiffs allege they lost money and/or property through the diminution in value of their phones for

20  which they overpaid; the reduction in battery life; and the improper utilization of portions of their

21  data plans. (SAC ¶9, 11- 14, 28-32, 88-105.) Google's brief contends that the SAC "does not even

22  try to rehabilitate" Plaintiffs' overpayment theory ignores that the SAC specifically includes the

23  amount Plaintiffs paid for their phones and alleges they would have paid less had they known about

24  Android's tracking issues. (SAC ¶97.) Google again argues that the data plan usage allegations are

25  insufficient but again offers no reason why. Tellingly, none of the cases Google cites for this

26  proposition relate to data privacy. Most importantly, Google ignores that the Court *already held*

27  Plaintiffs could state a claim under the UCL's unfair prong if they could allege standing.

28  These allegations are recognized as an economic injury under the UCL. There are numerous

ways economic injury can be alleged, including "having a present or future property interest diminished" and "be[ing] deprived of money or property to which a [plaintiff] has a cognizable claim." *Kwikset*, 51 Cal. 4th at 323. An individual may recover profits unfairly obtained to the extent that these profits represent monies given to the defendant or benefits in which the plaintiff has an ownership interest. *Korea Supply Co. v. Lockheed Martin Corp*., 29 Cal. 4th 1134, 1148 (2003). Plaintiffs need not establish exactly what money defendant received as a direct result of the purported wrongful conduct for restitution to be awarded. *Fletcher v. Security Pac. Nat'l Bank*, 23 Cal. 3d 442, 450-451 (1979). Thus, Defendant's arguments that Plaintiffs did not purchase the phones directly from Google are of no moment because Google benefited from its wrongdoing in the design of the Android system. Indeed, "that a party may be unable to prove a right to damages does not demonstrate that it lacks standing to argue for its entitlement to them." *Kwikset*, 51 Cal. 4th at 336 (quoting *Clayworth v. Pfizer, Inc*., 49 Cal. 4th 758, 789 (2010)). Courts have also ruled that the UCL does not require that lost money or property be the product of defendant's actual wrongful acquisition of such money or property. See *White v. Trans Union LLC*, 462 F. Supp. 2d 1079, 1084 (C.D. Cal. 2006).

Plaintiffs have satisfied the UCL pleading requirements; they allege facts demonstrating dissatisfaction with the product received and the lack of disclosure. *Cole v. Asurion Corp*., 2008 WL 5423859, at *6 (C.D. Cal. Dec. 30, 2008); See also *In re Nissan North America, Inc. Odometer Litig*., 664 F. Supp. 2d 873, 890 (M.D. Tenn. 2009) (plaintiffs successfully pled injury where they alleged they did not receive the benefit of their bargains, both with respect to the odometers themselves and the warranties). Lastly, both injunctive relief and restitution are available under the UCL. Bus. & Prof. Code § 17203. While a showing of an entitlement to restitution is necessary for an order of restitution, a showing of entitlement to restitution is not a prerequisite to standing under the UCL because injunctive relief is nonetheless still available. *See G&C Auto Body Inc. v. Geico General Ins. Co*., 2007 WL 4350907, at *4 (N.D. Cal. Dec. 12, 2007) (upholding the plaintiff's claim for injunctive relief under the UCL although the plaintiff could not recover restitution); see also *Korea Supply Co. v. Lockheed Martin Corp*., 29 Cal. 4th at 1149 (2003).

Case No.: 11-MD-02264 JSW
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
SECOND AMENDED CONSOLIDATED COMPLAINT

1          **1.      Google's Unlawful Conduct**

2          "Unlawful business acts or practices within the meaning of the UCL include anything that can

3   properly be called a business practice and that at the same time is forbidden by law." *McKell v.*

4   *Washington Mutual, Inc.*, 142 Cal. App. 4th 1457, 1474 (2006) (quoting *Cel-Tech,* 20 Cal; 4th at

5   180). "A practice is forbidden by law if it violates any law, civil or criminal, statutory or judicially

6   made, federal, state or local." *McKell*, 142 Cal. App. 4th at 1474 (citing *Smith v. State Farm Mutual*

7   *Automobile Ins. Co.*, 93 Cal. App. 4th 700, 718 (2001); *Saunders v. Superior Court*, 27 Cal. App. 4th

8   832, 838 (1994)). "By extending to business acts or practices which are 'unlawful,' the UCL permits

9   violations of other laws to be treated as unfair competition that is independently actionable. Even if

10  the violation of another law does not create a private right of action, if the violation constitutes unfair

11  competition, it is actionable." *McKell*, 142 Cal. App. 4th at 1474-75 (quoting *Kasky v. Nike, Inc.*, 27

12  Cal. 4th 939, 949-50 (2002)). Google's conduct is unlawful in that it violates the CFAA and other

13  statutes. Further, as alleged in the SAC, Google's conduct likely violates a consent order Google

14  reached with the Federal Trade Commission. (SAC ¶¶20-21.) Google offers no further argument as

15  to how the SAC does not satisfy this prong.

16         **2.      Google's Unfair Conduct**

17         Google again ignores that the Court already found that Plaintiffs stated a claim under the unfair

18  prong if they could sufficiently allege standing, which they did. "A business practice is unfair within

19  the meaning of the UCL if it violates established public policy or if it is immoral, unethical,

20  oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." *McKell*,

21  142 Cal. App. 4th at 1473. To establish an unfair competition claim under the "unfair prong", courts

22  have considered the following factors: (1) the existence of substantial consumer injury; (2) whether

23  the injury is outweighed by any countervailing benefits to consumers or competition; and (3) whether

24  the injury could not have been reasonably avoided by the consumer. *Camacho v. Auto Club of So.*

25  *Cal.*, 142 Cal. App. 4th 1394, 1403 (2006); see also *Shroyer v. New Cingular Wireless Servs., Inc.*,

26  622 F.3d 1035, 1044 (9th Cir. 2010).

27         Google has designed and deployed a mobile operating system that works to collect and

28  disseminate the private data of its users for the benefit of Google and its affiliates. In doing so, it

drains the resources of the phones and data plans paid for by Android users. This conduct is unfair. In its prior Order, the Court held that Plaintiffs stated a cause of action under the unfair prong of the UCL in the FAC. Nothing in Defendants' motion requires a different result. Google's argument that Plaintiffs could have avoided their injury again completely ignores how Google has designed Android. As alleged, the collection and transfer of geolocation data occurs even when the geolocation is set to off – the only way it would have been obvious to "avoid" the injury.

### 3. Google's Fraudulent Conduct

To establish an unfair competition claim under the "fraudulent conduct" prong, Plaintiffs must show that [the] representations were false or were likely to have misled "reasonable consumers." See *Belton v. Comcast Cable Holdings, LLC*, 151 Cal. App. 4th 1224, 1241 (2007). "A fraudulent business practice is one which is likely to deceive the public. It may be based on representations to the public which are untrue, and also those which may be accurate on some level, but will nonetheless tend to mislead or deceive. A perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under the UCL." *McKell*, 142 Cal. App. 4th at 1471 (collecting cases).

"The fraudulent business practice prong of the UCL has been understood to be distinct from common law fraud. A common law fraudulent deception must be actually false, known to be false by the perpetrator and reasonably relied upon by a victim who incurs damages. None of these elements are required to state a claim for injunctive relief under the UCL." *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009) (internal quotations omitted). "This distinction reflects the UCL's focus on the defendant's conduct, rather than the plaintiff's damages, in service of the statute's larger purpose of protecting the general public against unscrupulous business practices." *Id.* "Reliance is proved by showing that the defendant's misrepresentation or nondisclosure was an immediate cause of the plaintiff's injury-producing conduct." *Id.* at 326.

In the SAC, Plaintiffs included the statements made by Google in its Terms of Service and Privacy Policy that show how Google misrepresents its protection of Android users' data. Plaintiffs were shown this policy and forced to agree to it in order to use their phones and make any purchases from Google Play. However, contrary to their stated policy, Google failed to protect users' data. The

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
SECOND AMENDED CONSOLIDATED COMPLAINT

statements made to induce Android device and Google Play purchases were false and misleading. Accordingly, Plaintiffs have stated a cause of action under the fraudulent prong of the UCL.

### 4. Google's Class Arguments Are Premature

Google's argument made in passing in footnote 14 of its brief that non-California residents may not pursue UCL claims is premature. Nothing in *Mazza*, 666 F.3d at 594, holds that non-California residents may never pursue UCL claims. "To the extent that [defendant] argues that California law cannot be applied to consumers nationwide as a matter of law, [defendant] is incorrect." *In re POM Wonderful LLC Mktg. & Sales Practices Litig*., 2012 U.S. Dist. LEXIS 141150, at *11 (C.D. Cal. Sept. 28, 2012) (citing *Bruno v. Eckhart Corp*., 280 F.R.D. 540, 546-47 (C.D. Cal. 2012)). Plaintiffs have not had the benefit of any discovery; the appropriateness of class treatment and its scope will be decided at the class certification stage and is inappropriate at the motion to dismiss stage.

## V. EVIDENTIARY OBJECTIONS

Plaintiffs move to strike the declaration of Michael H. Rubin and all of its exhibits improperly submitted with Google's motion to dismiss. The well-settled rule is that documents outside of the complaint may be considered in ruling on a Rule 12(b)(6) motion only where the following requirements are met: (a) the contents are alleged in the complaint; (b) the complaint "necessarily relies" on the documents; and, (c) no party questions the authenticity of those documents. *Butler v. Los Angeles City*, 617 F. Supp. 2d 994, 999 (C.D. Cal. 2008) (denying motion to dismiss, in part). The requirements are not met here. Defendant cherry-picked certain documents of unknown version and origin, the majority of which are not even Google-sourced documents. Indeed, Exhibits C-K were printed from the websites of other companies who are not parties. None of the documents were referenced in the SAC, let alone had their contents alleged in the SAC; thus, the SAC cannot "necessarily rely" on them. Their authenticity is very much in question given that Google's counsel cannot authenticate documents he printed from websites that are not related to his client.

## VI. CONCLUSION

Plaintiffs have Article III standing as they suffered injury as a direct result of Google's conduct and state causes of action for violations of the CFAA and the UCL. Thus, Plaintiffs' motion to strike the Rubin Declaration should be granted and Defendant's motion to dismiss must be denied.

Dated: July 19, 2013                    AUDET & PARTNERS, LLP


                                         _____/s/ Jonas P. Mann_____
                                         WILLIAM AUDET
                                         JONAS P. MANN (CA Bar No. 263314)
                                         waudet@audetlaw.com
                                         jmann@audetlaw.com
                                         AUDET & PARTNERS LLP
                                         221 Main Street, Suite 1460
                                         San Francisco, CA 94105
                                         Telephone:      (415) 568-2555
                                         Facsimile:      (415) 568-2556

                                         ROBERT K. SHELQUIST (*Pro Hac Vice*)
                                         rshelquist@locklaw.com
                                         LOCKRIDGE GRINDAL NAUEN P.L.L.P.
                                         100 Washington Avenue S., Suite 2200
                                         Minneapolis, MN 55401
                                         Telephone:      (612) 339-6900
                                         Facsimile:      (612) 339-0981

                                         ***Interim Co-Lead Counsel***

                                         Joseph H. Malley
                                         LAW OFFICE OF JOSEPH H. MALLEY, PC
                                         1045 North Zang Boulevard
                                         Dallas, TX 75208
                                         Telephone:      (214) 943-6100
                                         malleylaw@gmail.com

                                         Salim Khawaja
                                         LAW OFFICE OF SALIM KHAWAJA
                                         1010 Second Avenue
                                         Suite 1750
                                         San Diego, CA 92101
                                         Telephone:      (619) 685-5300
                                         Facsimile:      (619) 685-5344
                                         salimklaw@hotmail.com

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
SECOND AMENDED CONSOLIDATED COMPLAINT

Steven T. Budaj
Donald J. Andrews, II
Paul M. Hughes
STEVEN T. BUDAJ, P.C.
65 Cadillac Square
Suite 2915
Detroit, MI 48226
Telephone:     (313) 963-9330
Facsimile:     (313) 963-9185
stbudaj@counsel.com
j.andrews2@excite.com
paul@attorneyhughes.com

Sara Dawn Avila
Gillian Leigh Wade
MILSTEIN ADELMAN, LLP
2800 Donald Douglas Loop North
Santa Monica, CA 90405
Telephone:     (310) 396-9600
Facsimile:     (310) 396-935
savila@milsteinadelman.com
gwade@milsteinadelman.com

Howard W. Rubinstein
Benjamin Lopatin
THE LAW OFFICES OF HOWARD W.
RUBINSTEIN
P.O. Box 4839
Aspen, CO 81612
Telephone:     (832) 715-2788
Facsimile:     (561) 688-0630
howardr@pdq.net
blopatin@gmail.com

Richard A. Proaps, Esq.
8150 Greenback Lane
Building 200
Fair Oaks, CA 95628
Telephone:     (916) 722-1665
Facsimile:     (916) 722-4881
rproaps@aol.com

Aaron C. Mayer
MAYER LAW GROUP
18 Carolina Street
Suite B
Charleston, SC 29403
Telephone:      (843) 376-4929
Facsimile:      (888) 446-3963
aaron@mayerlawgroup.com

Nabil Majed Nachawati, II
FEARS NACHAWATI LAW FIRM
4925 Greenville Avenue
Suite 715
Dallas, TX 75206
Telephone:      (214) 890-0711
Facsimile:      (214) 890-0712
mn@fnlawfirm.com

Donald Amamgbo
AMAMGBO & ASSOCIATES
6167 Bristol Parkway, #325
Culver City, CA 90230
Telephone:      (310) 337-1137
Facsimile:      (310) 337-1157
donald@amamgbolaw.com

Reginald Terrell
THE TERRELL LAW GROUP
Post Office Box 13315, PMB #148
Oakland, CA 94661
Telephone:      (510) 237-9700
Facsimile:      (510) 237-4616
reggiet2@aol.com

E. Kirk Wood
WOOD LAW FIRM, LLC
P.O. Box 382434
Birmingham, AL 35238-2434
Telephone:      (205) 612-0243
Facsimile:      (866) 747-3905
ekirkwood1@bellsouth.net

Case No.: 11-MD-02264 JSW
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
SECOND AMENDED CONSOLIDATED COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Joe R. Whatley, Jr.
Whatley, Drake, & Kallas
2001 Park Place North
Suite 1000
Birmingham, AL 35203
Telephone:      (205) 328-9576
Facsimile:      (205) 328-9669
jwhatley@wdklaw.com

Jeremy Reade Wilson
WILSON TROSCLAIR & LOVINS
302 North Market Street
Suite 501
Dallas, TX 75202
Telephone:      (214) 430-1930
Facsimile:      (214) 276-1475
jeremy@wtlfirm.com

Brian W. Smith
SMITH & VANTURE, LLP
1615 Forum Place, Suite 4C
West Palm Beach, FL 33401
Telephone:      (561) 684-6330
Facsimile:      (561) 688-0630
bws@smithvanture.com

***Attorneys for Plaintiffs***

Case No.: 11-MD-02264 JSW
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
SECOND AMENDED CONSOLIDATED COMPLAINT